Estate of Trowbridge: Marshall & Ilsley Bank, Administrator, Appellant, vs. Perry, Executor, and another, Respondents.

*December 8, 1943—February 15, 1944.*

520

522

For the appellant there was a brief by *Backus & Parson* of Milwaukee, and oral argument by *August C. Backus, Jr.*

For the respondent C. Stanley Perry there was a brief by *C. Stanley Perry, in pro. per.,* and *Raymond J. Perry,* both of Milwaukee, and oral argument by *Raymond J. Perry.*

For the respondent Elsie H. Gray there was a brief by *Kaumheimer, Alt & Likert* of Milwaukee, and oral argument by *George H. Likert, Jr.*

BARLOW, J. The question is whether the carrying charges of the unproductive trust property are payable out of the principal thereof or whether they should be assumed and paid from the residue of the personal estate. Appellant contends that the order and judgment of the court under date of October 14, 1933, construes the will and determines that the carrying charges of the trust property are to be assumed and paid from the residuary personal estate, and no appeal having been taken, it is *res judicata.*

We consider the court did not intend to, nor did it, construe the will in the above order and judgment. The will was executed on August 28, 1928, and admitted to probate on April 3, 1929. Shortly prior to her death, testatrix sold some of the land which was a part of this tract at a very substantial price, and there was demand for the balance of the property. It was not unnatural for her to assume that these conditions would continue to exist, at the time she executed the will. However, the depression followed shortly after her death and the court in its order and judgment of October 14, 1933, recognized this fact in the following language:

"That the said testator, Trowbridge, died on the 19th day of February, 1929, and that the present depression in busi-

ness, and particularly in manufacturing industry, has combined to create such conditions as have destroyed any demand for the said trust property during the time intervening since the death of said testator, and that the carrying charges in taxes on said real estate have at all times continued and will continue until the sale of the same can be made with all other expense connected with carrying the same, which taxes and expense amount to a considerable sum annually."

Title to the trust real estate passed under the will to the trustees without any order of the court assigning the property to them, notwithstanding that the appointment of the trustees was deferred until the executors had settled their final account. *Will of Greene* (1942), 240 Wis. 452, 3 N. W. (2d) 704.

Under paragraph forty-eight of the will, the residue of the personal property passed to William R. Childs. It is the general rule of the law of trusts that any charges incurred with respect to unproductive property are payable out of the principal thereof unless the settlor manifested a different intention in the instrument creating the trust. Restatement, 1 Trusts, pp. 733, 734, sec. 241 (1), (2), (3); 103 A. L. R. 1271, note; 2 Scott, Trusts, pp. 1270, 1271, sec. 233.4; *Spencer v. Spencer,* 219 N. Y. 459, 114 N. E. 849; *Stone v. Littlefield,* 151 Mass. 485, 24 N. E. 592; *In re Trusteeship Under Will of Moore,* 185 Minn. 342, 241 N. W. 63. It is evident this property had value under normal conditions and that it was advisable to save it if possible. As the property was unproductive, money to pay the carrying charges had to be obtained from somewhere, either by loans from strangers or the advancement of funds of the estate bequeathed to others. The safer and virtually the only place to obtain the money was to use, temporarily, funds in the residue of the personal estate which was to pass to Childs. If this was not done, the property would be sold for taxes, and the interest of the Mitchell beneficiaries in the trust would be entirely destroyed. At that time there was no equity from which

William R. Childs was going to benefit, because to do so the property had to produce $50,000, plus carrying charges from 1929. Five years' taxes had already accumulated and were unpaid amounting to $4,301.01 at the time of filing the order and judgment. The order and judgment provided—

". . . that *until sale* of the real estate charged with the trust provisions expressed in the forty-seventh (47th) paragraph of her said will, that all proper *carrying charges,* including taxes, of the real estate which is the subject of said trust provisions, and which real estate is vacant and devoid of income, *should* and shall be carried out of the residue of said estate. . . ."

This must be construed to mean that the carrying charges were to be carried by the residue of the estate only *"until sale of the real estate charged with the trust provisions."* The use of the language "until sale of the real estate" is highly significant when full consideration is given to the fact that it was a depression period, which the court clearly recognized, and everyone naturally assumed that it was not a permanent condition. Within a month the executors filed an account with the court and set forth the payment of the taxes on the trust property and designated it as an *"advancement."* In preparing and filing this account the executors were complying with the order and judgment of the court, and if the carrying charges of the trust property were to be a permanent charge against the personal estate there would have been no occasion to separate it from other allowable expenses and treat it under a separate subdivision as an advancement. All that the court did was to provide a method for the payment of the taxes on the unproductive trust property by using, for the present, funds in the residue in order to preserve the trust estate until the property could be sold, extend the time for closing the estate, and direct the filing of a supplemental account, holding the determination of all other questions in abeyance until the sale of the real estate had been made. Un-

der the doctrine of *res judicata*, a judgment is conclusive only as to matters which it decides. *Willey v. Lewis* (1902), 113 Wis. 618, 88 N. W. 1021. The court did not decide the residue of the personal estate, which was bequeathed to Childs, was to be considered ultimately liable for the carrying charges of the trust estate. That would have been beyond the power of the court under the provisions of the will, and its order and judgment of October 14, 1933, are not to that effect or *res judicata* in that respect.

With the sale of the trust real estate completed this estate is ready to be closed, and the court in this proceeding was required to determine the funds available for trust purposes under paragraph forty-seven of the will and the residuary personal estate under paragraph forty-eight of the will. In the earlier paragraphs of the will specific parcels of real estate and items of personal property were given to Ethel Childs Mitchell, and likewise certain real estate and personal property was given to William R. Childs. Under paragraph forty-seven of the will the remainder of the real estate was to be sold by the trustees as soon as they were able to obtain a fair and satisfactory consideration therefor, and $50,000 of the proceeds was to be invested in securities as a trust fund for the purposes therein set forth. This left the residuary personal estate to be disposed of, and under paragraph forty-eight of the will the testatrix gave the remainder of the personal estate to her nephew, William R. Childs. Testatrix had two purposes in view. One was to create a trust from the proceeds of the sale of the real estate for the benefit of the Mitchells, and the other was to dispose of the residuary personal estate, which she gave to William R. Childs. Each purpose was separate and distinct. We find nothing in the terms of the will to indicate that she desired to enrich the Mitchells at the expense of Childs. It cannot be contended that, because the real estate failed to produce $50,000, this was to be supplemented from the personal estate, in order to

provide this amount. If we were to hold that the taxes which were advanced from the personal estate, or the unpaid taxes at the time of the sale, are to be paid from the personal estate, we would be indirectly doing what we consider was not intended by the testatrix. The trust fund was to consist of the proceeds of the sale of the real estate less the carrying charges, and not to exceed $50,000.

The administrator *de bonis non* concedes that the inheritance taxes advanced for the Mitchell interests should be repaid, but contends that no interest should be allowed. They had the benefit of all the moneys advanced for them, and Childs, as residuary legatee of the personal estate, was therefore unable to have the use of these funds. It is proper that interest should be allowed on all advancements.

*By the Court.*—Order affirmed.

FAIRCHILD, J. (*dissenting*). I am of the opinion that the judgment in this case should not be affirmed. My reasons are as follows:

It appears that the question now considered was definitely decided and finally determined by the judgment of the county court October 14, 1933, from which no appeal was taken. The trust thus was to have the benefit of whatever the property sold for up to $50,000. I doubt the propriety of going back of the judgment which has stood unreversed for so many years, especially as there was no agreement to circumvent or offset the effect of the judgment.

The testatrix in her will provided for a $50,000 trust for the benefit of her niece. The fund for the trust was to be obtained from the sale of certain real estate and the trustees were to manage and be responsible for the sale. The will provided:

"Forty-seventh. All the rest, residue, and remainder of the real estate belonging to my estate at the time of my decease, of every description and wheresoever located, I give,

devise, and bequeath to Charles B. Perry and William R. Childs, trustees, and to their successors as trustees, but only to them in trust for the following purposes:

"(A) To sell, dispose of and convey the said real estate, whenever and as soon as they are able to obtain for the same a fair and satisfactory consideration therefor, but with the express provision, that they may take such reasonable time to effect such sale as shall by said trustees be deemed to be for the best interests of the said trust estate. . . ."

This real estate was not productive and shortly after the death of the testatrix there was no market for it. The question then arose as to how the creation of the trust could be carried out. A construction of the will was sought and the court took the matter under advisement saying: "I will go into the merits." On October 14, 1933, the court said:

"And I find that such provision and all provisions in said will were made by the testator with full knowledge that said trust real estate was in a location suitable for manufacturing purposes only, that the same enjoyed railway spur or lead and switching privileges, and that the said land by reason of prior sales therefrom was of considerable value for such purposes; that the same would not be productive of income for carrying charges, and that with all such knowledge on her part as to the said property, the expression by her made in said will directing that sale be made only at a fair and satisfactory consideration with the further direction as to reasonable time for sale, and with the provision for disposition of residue in the forty-eighth (48th) paragraph of said will *evidence an intent on her part as testator that the carrying charges of said real estate, charged with the trust provisions* contained in the forty-seventh (47th) paragraph of said will *should and must be paid for the protection of said nonincome-bearing property out of any portion of estate available therefor,* and that the residue of estate to be disposed of by the forty-eighth (48th) paragraph of said will cannot be determined until said trust real estate is disposed of, *and that said undetermined residue should be made subject to the charges of carrying said trust real estate until sale thereof.* That any other construction as to the intention of the testator, Trowbridge, in said will to

protect the said real estate so charged with said trust, until sale thereof can be made in accordance with the terms, of said will and particularly during the present business depression will subject said estate to *possible failure of the trust* provided in said will."

The court then ordered, adjudged, and decreed:

"That to carry out the provisions of the last will and testament of Emily L. C. Trowbridge, deceased, on file and admitted to probate in said matter, and in particular with reference to the real estate charged with the trust provisions expressed in the forty-seventh (47th) paragraph of said will, and the residue of estate provided to be disposed of by the forty-eighth (48th) paragraph thereof; it was and is the intent of the testator, Emily L. C. Trowbridge, in her said will and testament and the construction of this court concerning said intent, that until sale of the real estate charged with the trust provisions expressed in the forty-seventh (47th) paragraph of her said will, that all proper carrying charges, including taxes, of the real estate which is the subject of said trust provisions, and which real estate is vacant and devoid of income, should and shall be carried out of the residue of said estate, which residue will be the portion of said estate as determined in the forty-eighth (48th) paragraph of said will.

"And more fully to effectuate said will in accordance with the intent of the testator and the construction thereof as herein adjudged, it is hereby ordered, that the time for settlement of said estate by the executors be extended for the period of one (1) year from the date hereof. . . ."

It must be borne in mind that the judgment of construction was made in a proceeding in which the residuary legatee sought to have his interest separated from the trust.

Now with the intention of the testatrix fixed as above set forth, how is it possible to reverse the proceedings on the theory that but for the payment of the taxes the trust *res* would have been lost? Did not the testatrix expressly provide for the very contingency which did arise? Certainly the court could not reach into the property of anyone else and

compel him to advance his money or use his property for the benefit of the trust. The trust would have had to stand on its own legs and might have failed but for the requirement of the testatrix that the estate was to establish and protect the trust to the full extent of what the property would yield. If the testatrix intended what the judgment of the county court decided she did intend, then the residuary legatee did not use his money to pay the taxes and save the trust. The assets still belonged to the estate and were subject to the direction of the testatrix as determined by the 1933 judgment and so much as was saved for the trust belongs to the trustee. The opinion of the court is that the county court in the judgment of 1933 did not mean to fix the responsibility for protecting the trust upon the estate, but I have quoted from the judgment and from that it seems plain that it is not a matter of advances or of generosity on the part of the residuary legatee. The testatrix fixed the burden on the estate.

I am authorized to state that Mr. Justice FOWLER concurs in this opinion.